UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL CASE NO. |
| | : | 3:14-CR-00063-JCH |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRAYAN GOMEZ, | : | JUNE 25, 2015 |
| Defendant. | : | |

**RULING RE: MOTION TO SUPPRESS (Doc. No. 34)**

**I.   INTRODUCTION**

Defendant Brayan Gomez ("Gomez") filed a Motion to Suppress Evidence (Doc. No. 34) on June 12, 2014.  Gomez seeks to suppress evidence gathered in a warrantless search of his vehicle during a traffic stop on March 20, 2014.  Gomez argues 1) that the officers did not have probable cause to pull him over for a traffic violation, 2) that he did not consent to the search of his vehicle, and 3) that even if there was probable cause for the stop, he was unlawfully detained when the officers measurably extended the duration of the stop with inquiries unrelated to the traffic violation, and thus that even if there was consent, it was tainted by the unlawful detention.  The government argues that the officers had probable cause for the stop and that Gomez consented to the search of his vehicle.  On June 17, 2015, the court held an evidentiary hearing on Gomez's Motion.

For the reasons that follow, the court DENIES Gomez's Motion.

**II.   BACKGROUND**

On March 20, 2014, Gomez was stopped by law enforcement as he was driving on Prospect Street in East Hartford in a 2006 black Honda owned by his sister-in-law.

1

The officers subsequently conducted a warrantless search of the cabin and trunk of the Honda, including a duffel bag located in the trunk.  Gomez seeks the suppression of physical evidence recovered as a result of this search, namely: (1) a large, cardboard box containing numerous, smaller cardboard boxes, stamped with the name "City Vibe," which law enforcement recognized as being connected to heroin distribution; (2) 102 grams of raw heroin; (3) approximately 250 grams of bagged heroin in 10,000 smaller bags; (4) another approximately 83 grams of heroin in 3,300 smaller bags; (5) a loose set of 20 bags of heroin (of unspecified weight); (6) 44 boxes containing a total of approximately 25,000-50,000 empty bags for bagging heroin; and (7) miscellaneous paraphernalia associated with heroin distribution, including plastic bags, elastic bands, a toothbrush, a sifter, and a large amount of a substance used to cut heroin.

      The government argues that the officers had probable cause to stop Gomez because he had committed traffic violations, which Gomez denies.  The government further argues that Gomez consented to the search of the vehicle and trunk, and the bag in the trunk.  Gomez denies that he gave consent for the officers to search either the cabin or trunk of the Honda.  At its hearing on June 17, 2015, the court heard testimony from Detective James Campbell and Special Agent Michael Schatz.  The court also reviewed the exhibits submitted into evidence in connection with the November 20, 2014 hearing before the previously presiding judge, the transcript of the November 20, 2014 hearing, the affidavit submitted by Gomez as part of his Motion to Suppress, and briefs submitted by the parties in connection with the first hearing.

**III.    DISCUSSION**

    A.    <u>Whether officers had probable cause for the stop</u>

The Fourth Amendment "requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." <u>United States v. Harrison</u>, 606 F.3d 42 (2d Cir. 2010) (citing <u>United States v. Stewart</u>, 551 F.3d 187, 191 (2d Cir. 2009)).  As long as an officer has probable cause to believe that a traffic violation occurred, "whether the officer had an 'ulterior motive' is irrelevant to the Fourth Amendment analysis." <u>United States v. Williams</u>, 453 F. App'x 74 (2d Cir. 2011) (summary order) (citing <u>Whren v. United States</u>, 517 U.S. 806, 812 (1996)); <u>see</u> also <u>United States v. Dhinsa</u>, 171 F.3d 271, 724-25 (2d Cir. 1998) ("[A]n officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance.").

Both Detective Campbell and Special Agent Schatz testified that they observed Gomez committing several traffic violations, including speeding and driving through a red light when entering the highway.  The court finds that their testimony was credible and supports a finding that they had probable cause or reasonable suspicion that Gomez had committed a traffic violation.  Thus, the traffic stop itself did not violate the Gomez's rights under the Fourth Amendment.

    B.    <u>Whether Gomez consented to the search</u>

"It is well settled that a warrantless search does not violate the Fourth Amendment if the authorities have obtained the voluntary consent of a person

authorized to grant such consent, and that so long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search." United States v. Hernandez, 85 F.3d 1023, 1028-29 (2d Cir. 1996) (internal citations and quotation marks omitted). Whether consent was voluntary "is a question of fact to be determined from all of the surrounding circumstances." United States v. Moreno, 701 F.3d 64, 76 (2d Cir. 2012) (quoting United States v. Arango–Correa, 851 F.2d 54, 57 (2d Cir.1988)).

Both Detective Campbell and Special Agent Schatz testified that Detective Campbell asked Gomez for consent three separate times: to search the interior of the car, to search the trunk, and to search the duffel bag in the trunk. Both Detective Campbell and Special Agent Schatz testified that Gomez consented to the search each time. They further testified that Detective Campbell informed Gomez that he was investigating narcotics. The officers' versions of the stop were largely consistent with each other, as well as with their prior testimony in the November 20, 2014 hearing. The court finds their testimony credible. Thus, notwithstanding Gomez's sworn statement to the contrary,[1] the court finds that he did consent to the search of his vehicle, including the trunk, and that such consent was knowing and voluntary.

C.  Whether Gomez's consent was tainted by an unlawful detention

Gomez argues that, even if there was probable cause for the stop, he was unlawfully detained because the officers measurably extended the duration of the stop making unrelated inquiries and searches, rather than processing the traffic violation. Defendant's Post-Suppression Hearing Brief on Motion to Suppression (Doc. No. 59) at

---

[1] Gomez did not testify at either hearing.

4

5.  Thus, he argues that, even if there was consent for the search, it was tainted by the unlawful detention.

"An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." Arizona v. Johnson, 555 U.S. 323 (2009).  In other words, an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop . . . [b]ut . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual."  Rodriguez v. United States, 575 U.S. ___, 135 S. Ct. 1609, 1615 (2015).

The Second Circuit has previously found a stop of five to six minutes was not unlawfully prolonged, United States v. Harrison, 606 F.3d 42 (2d Cir. 2010), and other circuits have upheld longer intervals,  see United States v. Turvin, 517 F.3d 1097, 1103–04 (9th Cir.2008) (a 14–minute period of questioning was not unlawful because "officers do not need reasonable suspicion to ask questions unrelated to the purpose of an initially lawful stop [where the questioning] did not unreasonably prolong the duration of the stop"); United States v. Hernandez, 418 F.3d 1206, 1212 n. 7 (11th Cir.2005) ("Where at its inception a traffic stop is a valid one for a violation of the law, we doubt that a resultant seizure of no more than seventeen minutes can ever be unconstitutional on account of its duration: the detention is too short . . . . Even if seventeen minutes is some minutes longer than the norm, we question whether the Fourth Amendment's prohibition of unreasonable seizures is concerned with such trifling amounts of time,

5

when the seizure was caused at the outset by an apparent violation of the law. Of trifles the law does not concern itself.").

There is no evidence on the record to contradict testimony by Detective Campbell and Special Agent Schatz that the stop lasted five minutes at most until Gomez was arrested. Based on the record before it, the court finds that, while Gomez was questioned about matters unrelated to the traffic violation during this time period, such questioning did not unreasonably prolong the stop so as to render it unconstitutional. "What the Constitution requires is that the entire process remain reasonable." Harrison, 606 F.3d at 45 (citing United States v. Childs, 277 F.3d 947, 953–54 (7th Cir. 2002) (en banc)). The court finds that the process was reasonable in time, and that the officer's unrelated inquiries did not "measurably extend the duration of the stop." Rodriguez, 575 U.S. ___, 135 S. Ct. at 1615 (citing Johnson, 555 U.S. at 333).

Because the court concludes that the officers had probable cause for the traffic stop, that Gomez consented to the search of his vehicle, including the trunk and duffel bag, and that the stop was not unreasonably prolonged, the court DENIES Gomez's Motion.

## IV.   CONCLUSION

For the foregoing reasons, Gomez's Motion to Suppress Evidence (Doc. No. 34) is **DENIED.**

**SO ORDERED.**

Dated at New Haven, Connecticut, this 25th day of June, 2015.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

6